IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

AMINA BENAHMED, ET AL,

        Plaintiff,     Case No. 3:09 CV 1757

   -vs-

               MEMORANDUM   OPINION

HCC INSURANCE HOLDINGS, INC.,

        Defendant.

KATZ, J.

   This matter is before the Court on the parties' motions for summary judgment (Doc. 22, 23) and the responses thereto (Doc. 27-32).  The Court notes diversity jurisdiction under 28 U.S.C. §1332  and proper venue under  28 U.S.C. §1391.

## I. BACKGROUND

   On February 8, 2006, Abdulgader Zbedah ("Zbedah") was flying a cargo flight from Dayton, Ohio to Harlingen, Texas for TriCoastal Air, Inc. ("TriCoastal") when the aircraft crashed, killing him.  His estate, wife Amina Benahmed, and children (collectively "Plaintiffs") sued TriCoastal and Grand Aire Express, Inc. ("Grand Aire Express), among others, for his wrongful death (the underlying claim or suit) on February 8, 2007.  Plaintiffs reside in Kentucky; TriCoastal and Grand Aire Express were Michigan corporations with their principal place of business in Toledo, Ohio.

   At the time of Zbedah's death, Houston Casualty Company ("HCC"), a Delaware corporation, provided TriCoastal, along with several other Grand Aire companies, with an insurance policy ("Policy") covering their ownership of several airplanes and operation of those

airplanes.  Initially, HCC assumed the defense of the underlying claim, under a letter of reservation of rights dated February 20, 2007.  However, on March 12, 2007 and April 17, 2007, HCC issued letters denying coverage to TriCoastal and various Grand Aire companies and withdrew from defense of the underlying suit.  TriCoastal and the Grand Aire companies obtained their own counsel and settled the underlying claim for $5,278,753.  The settlement declared that Zbedah's death was caused by negligent maintenance attributable to TriCoastal and Grand Aire Express.

The Plaintiff's have asked for a declaratory judgment that HCC owed them $1,000,000 under the Policy as judgment creditors of TriCoastal and Grand Aire Express and for post-judgment interest under the Defense, Settlement and Supplementary Payments section of the Policy.  HCC cross-claimed for declaratory judgment denying coverage.  The parties agree on the underlying facts of this case.

## II. SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.*

2

at 323-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position.  *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071.  The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately,

3

this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. DISCUSSION

Under Ohio law, their disagreement over interpretation of insurance contract language is a question of law to be settled by the court. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir. 1999); *Leber v. Smith*, 639 N.E.2d 1159, 1163 (Ohio 1994). Ohio also requires that the Court construe any ambiguity in the language of an insurance contract "liberally in favor of the insured and strictly against the insurer." *American Fin. Corp. v. Fireman's Fund Ins. Co.*, 239 N.E.2d 33, 35 (Ohio 1968); *see also Lane v. Grange*, 543 N.E.2d 488, 490 (Ohio 1989) ("Where provisions of a contract of insurance are reasonably susceptible of more that one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured") (citations omitted). Further, an exclusion will only be enforced if it "plainly exclude[s] [the] claim from coverage." *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001). "Thus, in order to defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that fairly can be placed on the language in question." *Id*. (citations and quotation marks omitted).

*A. Coverage Under the Aviation Operations Endorsement*

The Plaintiffs' assert that the following language from Endorsement Four Section Two of the Policy covers TriCoastal and Grand Aire Express up to $1,000,000 for the death of Zbedah:

> <u>Aviation Products-Completed Operations Liability</u>
> This Policy will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of the **Insured's aviation operations** and/or the possession, use, consumption or handling of any goods or

4

> products manufactured, constructed, altered, repaired, serviced, treated, sold, supplied or distributed by the **Named Insured** or its employees, and then only after such goods or products have ceased to be in the possession or under the control of the **Insured**. (emphasis in original)

HCC does not dispute that Zbedah died during the course of "aviation operations." Instead, it argues that Grand Aire Express was not an "Insured," that the aircraft must have left the possession of an "Insured" for the coverage under the endorsement to apply, and that coverage for injury or death of Zbedah was excluded from the endorsement[1]. None of these arguments convinces this Court.

Both parties spend a considerable length of time arguing over whether Grand Aire Express was one of the "Insureds" or "Named Insureds" under the Policy. However, the point is moot because HCC never even tries to argue that TriCoastal was not covered and Plaintiffs' underlying judgment names both TriCoastal and Grand Aire Express.

HCC also asserts that Endorsement Four Section Two of the Policy would only apply "after such goods or products have ceased to be in the possession or control of" Zbedah or his employers. This argument misreads the disjunctive "and/or." The endorsement language clearly includes two sources of damages: aviation operations, a defined term, and goods or products leaving the possession of an "Insured." The definition of "aviation operations" makes no mention of "such goods or products," and thus the clause restricting coverage until "after such good or

---

[1] HCC also argues that the Policy is not a life insurance policy and that it cannot insure liability between Named Insureds. These arguments seem to rest on the assumption that "Named Insured" must be a single entity which cannot be legally liable to itself. The Court fails to follow this logic, since the Declarations clearly list multiple entities, including employees and officers who could be legally liable to each other under some portions of the policy, if such claims have not been specifically excluded.

products have ceased to be in the possession or control of the Insured" cannot logically apply to that source of potential coverage.

In addition to a set of enumerated exclusions, Endorsement Four Section Two states "coverage provided by this Section is subject to the same exclusions as are applicable to Coverages B, C, D and E of this Policy."  Plaintiffs argue that these words invoke only Exclusion Five which applies "Under Coverages B, C, D and E" and no part of which pertains to the accident.  HCC claims that the language includes Exclusion Six which applies "Under Coverages B, C and D" and excludes any claim by an employee such as Zbedah.  In other words, Plaintiffs assert that the language of Endorsement Four Section Two could reasonably mean that only exclusions applicable to *all* of Coverages B, C, D and E apply to that coverage and HCC claims that the language invokes the exclusions applicable to *any* of Coverages B, C, D and E.  Especially because HCC used the clearly disjunctive "and/or" earlier in the same section, the Court finds that "and" as used in the Exclusions portion of Endorsement Four Section Two could reasonably be read as conjunctive, implying that only exclusions applicable to all of the Coverages listed have been invoked; in other words, since the language is ambiguous as to whether only Exclusion Five applies, the Court will apply only Exclusion Five and declare that TriCoastal was covered under Endorsement Four Section Two.

*B. Post-Judgment Interest*

The Defense, Settlement and Supplementary Payments section of the policy contains the following language:

> With respect to Coverages B, C and D, [HCC] shall, subject to the terms and conditions of this policy, have the right and duty to defend any suit against the **Insured** seeking damages on account of such **bodily injury**, or **property damage** even if any of the allegations of the suit are groundless, false or fraudulent ...

6

> During such time as [HCC] is obligated to defend a claim or claims under the provisions of the preceding paragraph, [HCC] will pay with respect to such claim, in addition to the application of the limit of liability:
>
> 2.      all expenses incurred by [HCC], all costs taxed against the **Insured** in any suit defended by [HCC] and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before [HCC] has paid, tendered or deposited in court, that part of the judgment which does not exceed the applicable limit of [HCC]'s liability as shown herein; (emphasis in original)

The Plaintiffs make a claim under this section of the contract, citing HCC's duty to defend. They also invoke *res judicata* to prevent HCC from denying the application of that section and claim that HCC is estopped from seeking declaratory judgment denying the interest.[2]  HCC responded to Plaintiffs' reiteration of the claim, which to that point had only been passingly mentioned in the conclusions of Plaintiffs' briefs, with a motion to strike the claim for interest. The Court need not consider HCC's motion to strike because Plaintiffs' claim for post judgment interest fails.

As noted in the discussion of Endorsement Four Section Two *supra*, the Court will interpret any ambiguity in favor of an insured. However, unlike Endorsement Four Section Two, the language of the Defense, Settlement and Supplementary Payments section is quite clear: it applies only to Coverages B, C and D. Plaintiffs raise the issue of HCC's duty to defend, but the remedy they request is only available "[d]uring such time as [HCC] is obligated to defend a claim or claims *under the provisions of the preceding paragraph*" (emphasis added). The mentioned preceding paragraph invokes only Coverages B, C and D and makes no mention of *any*

---

[2] Plaintiffs also asserted *res judicata* and HCC's supposed inability to seek declaratory judgment in pressing their claim under Endorsement Four Section Two. The Court need not consider the merits of those arguments because Plaintiffs succeeded on other grounds.

endorsement.  Plaintiffs attempt to support their claim by appealing to the Ohio common law duty to defend, but the remedy sought is under the Policy, not the common law remedy.[3]

Plaintiffs also attempt to argue that *res judicata* and some form of estoppel related to the underlying claim bar HCC from defending this suit, including their claim for interest.  However, the only case they point to for this proposition merely states that HCC would be barred from asserting that TriCoastal acted with intent, rather than the negligence mentioned in the underlying judgment.  *Howell v. Richardson*, 544 N.E.2d 878, 881 (Ohio 1989).  Further, the reservation of right upon its initial defense of TriCoastal enabled HCC to withdraw, subject to duty to defend remedies, when it concluded that the claim was not covered.  *See Motorists Mut. Ins. Co., v. Trainor*, 294 N.E.2d 874.

## IV. CONCLUSION

For the reasons discussed herein, Plaintiffs' motion for summary judgment (Doc. No. 23) is hereby granted with regard to declaratory judgment of coverage under the Aviation Operations Endorsement denied as to the post-judgment interest.  Defendant's summary judgment motion (Doc. No. 22) is granted with regard to post-judgment interest and denied as to the remaining claims.  Finally, Defendant's motion to strike (Doc. No. 31) is denied as moot.  Case closed.

IT IS SO ORDERED.

      s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

---

[3] The Court does not address the viability of a normal duty to defend claim.

8